UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:08-cr-004-SEB-KPF |
| | ) | |
| DALE RUSSELL | ) | |
| | ) | |
| Defendant. | ) | |

**TRIAL BRIEF AND MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE EXPECTED TO BE PRESENTED BY DEFENSE**

The United States, by counsel, Gayle L. Helart and A. Brant Cook, hereby submit this trial brief notifying this Court of issues it requests to present on its case-in-chief and during cross- examination of Defendant, Dale Russell, should he testify.  Additionally, the government seeks to exclude any evidence of Russell's practices of being a "nudist" and his request to present evidence in the realm of nudist books and  magazines depicting nude images of children.

**NOTICE OF EVIDENCE THE GOVERNMENT WISHES TO PRESENT
IN  ITS CASE-IN-CHIEF**

The government requests to present on its case-in-chief: (1) Testimony by Jane Doe 1 of two sexual molests and one incident involving her siblings involving nude conduct directed by Russell; and (2) The entire series of the images charged in Count 1 taken at the same time, not just the approximately nine charged in the indictment.  The most complete set of images the government has obtained is 86 images.   The defense has been previously notified of all of this evidence.

Fed. R. Evid. 414(a) states that in a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. Fed. R. Evid. 413 is virtually similar allowing for the admission of prior offenses of sexual assault when a defendant is accused of an offense of sexual assault. The crime of "child molest" as defined by Rule 414(a) includes a crime of producing child pornography.[1]

In *United States v. Julian*, 427 F.3d 471, (7th Cir. 2005) the Seventh Circuit affirmed the district court's admission of a 1988 conviction for sexual assault of an 11 year old minor in the defendant's trial for conspiracy to travel in foreign commerce with intent to engage in sexual conduct with minors (*i.e.* sex tourism). The Court rejected the defendant's argument that the 12-year old conviction was too prejudicial as compared to its probative value because the conviction was admitted under Rule 413, not Rule 404(b). The Court explained that Rule 413(a) permits consideration of a prior sexual assault for its bearing on any matter to which it is relevant and that the legislative history revealed that Congress intended to include the defendant's propensity to engage in the offense of sexual assault with which he had been charged. *Id*. at 487. The Court also noted that there was no time limit for the prior offense citing cases where prior offenses that

---

[1] Rule 414(d) states, in relevant part, that for purposes of this rule that the "offense of child molestation" means a crime under Federal law or the law of a State...that involved
...
(2) any conduct proscribed by chapter 110 of title 18, United States Code.
(3) contact between any part of the defendant's body or an object and the genitals or anus of a child;
...

2

were 30 years old under both Rule 413 and 414 had been admitted. *Id*.

In *United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009), the defendant was charged with attempting to entice a minor to engage in sexual activity and producing child pornography involving a 14 year old girl and an uncover officer the defendant believed was 13 years old. The defendant had a prior state conviction in 2001 for using the internet to entice a minor to have sex. *Id*. at 818. The district court disallowed the 2001 conviction finding that it fit within Rule 413 but that the danger of unfair prejudice to the defendant outweighed its minimal probative value. *Id*. at 819. The government filed an appeal after this and other evidentiary rulings involving Rule 413. The Seventh Circuit found that 413 would be met in terms of the current and prior conduct both were sexual assault crimes within the meaning of the rule. The Seventh Circuit also noted that Rule 413 and 404(b) were different because Rule 413 expressly allows the government to use a defendant's prior conduct to prove the defendant's propensity to commit the types of crime described in the rule. *Id*. at 821. "Congress intended, in passing Rule 413, to provide an exception to Rule 404(b)'s general bar and to permit the trier of fact to draw inferences from propensity evidence." *Id*. The case was remanded for further analysis by the district court.

In the current case, instances of sexual contact, allowed by Rule 414, and the other pictures in the series in Count 1 are highly probative to the issue of Russell's intent and motive in taking the pictures. If Russell argues that his intent in taking the pictures in Count 1 were non-sexual, then instances of illegally touching and molesting Jane Doe 1 are directly contradictory to that point. Additionally, the other pictures in the series charged in Count 1 are probative to show that Russell staged a sexually charged scene. The pictures depict Jane Doe 1

3

getting out of bed, nude, with the cartoon character of "Spongebob" sheets and a towel. Jane Doe 1 will state this was not a series of pictures of her actually getting out of bed, but that Russell had directed this series of photographs and telling her to pretend as if she was waking up and then she was to place the towel in different places around her body. Sometimes the towel covered her genitals and chest, and sometimes it did not. The entire series of pictures will not be any more inflammatory than the approximately nine that are charged, and tell the entire story for the jury to judge the context.

## NOTICE OF POSSIBLE AREAS OF CROSS-EXAMINATION SHOULD DEFENDANT TESTIFY

In addition to the above evidence the government seeks to introduce in its case-in-chief, the United States submits further notice to the Court of areas that it intends to cover during cross- examination of Dale Russell, should he testify. Most of the cases below discuss the government introducing similar kinds of evidence during its case-in-chief; in contrast, the government would seek to introduce the following evidence on cross-examination should Russell testify. The defense has already been told of these areas of possible cross-examination.

**1. Dale Russell leaving for Mexico after meeting with government about case in July 2007 as evidence of flight to show a consciousness of guilt:**

On approximately July 12, 2007, Dale Russell met with the agents / officers at the United States Attorney's Office regarding the investigation with his then-lawyer whom he had retained. Russell was apprised of facts regarding the investigation and given a few weeks to respond to an offer. Subsequently, the government received back correspondence from the lawyer that Russell was seeking new counsel. In the fall of 2007, the agents / officers attempted to determine the whereabouts of Russell and ultimately learned that he might have gone to Mexico. The

government presented his case to a federal grand jury in January 2008 and the grand jury returned the indictment and an arrest warrant was issued. Russell appeared to be gone from the United States. Also, Russell's ex-wife and children did not receive any further child support from him.

Russell was located by ICE officials assigned in Mexico in August 2009. On August 22, 2009, Russell was placed on an airplane by Mexican authorities whose destination was Los Angeles, California. Russell was arrested by ICE agents and brought to Indiana after a detention hearing. In preparation for the detention hearing, ICE located Russell's application for a U.S. Passport submitted on July 3, 2007, wherein he wrote his intention was travel to Fiji for six days starting August 24, 2007. The passport was ultimately denied because the U.S. Department of State asked Russell to explain an apparent arrearage of child support in excess of $5000 and Russell failed to provide information. Since the passport was ultimately not issued, and since Russell was located in Mexico, it appears he went across the border to Mexico without a passport.

The government seeks to question Russell regarding the timing and destination of his travel where he was ultimately located in August 2009 and argue this as flight. The defense is expected to argue that this travel was preplanned and not in response to any investigation where he had yet to be formally accused of any crime or given any orders not to leave the Southern District of Indiana. The government expects the parties to agree on the facts about applying for the passport, the meeting with the government, and the travel or Mexico, but argue to the jury their respective positions on the inferences to make from these facts.

The Seventh Circuit has said that the probative value of flight as evidence of a

defendant's guilt depends on the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir. 1993). In *Levine*, the Court affirmed the evidence about flight on the government's case-in-chief and agreed that the degree of confidence with which the jury could have drawn these inferences was substantial because the defendant's conduct included selling his business, running to California, repeatedly crossing into Mexico, leaving no forwarding address, and using phony names. The Court rejected the defendant's arguments that he did not flee for more than a year after the murders involved in the case, however, the Court observed that he had no reason to flee until he realized that he might face criminal sanctions for the murders. *Id.* at 1107-08.

In *United States v. Solomon*, 688 F.2d 1171, 1176 (7th Cir. 1982) the Seventh Circuit upheld the government introducing evidence in its case-in-chief regarding the defendant's flight to Denver after meeting with civil IRS agents regarding tax issues stating, "It is a well settled area of law that evidence of flight and concealment is admissible to show consciousness of guilt, as well as guilt itself." The defendant attacked the third prong of the test, *i.e.* that the jury could have made an inference from consciousness of guilt to consciousness of guilt concerning the crime charged, because the meeting with the civil auditor could have only resulted in a civil penalty and no criminal investigation was initiated until a substantial time later. *Id.* The Seventh Circuit rejected that argument and stated that the trial court was correct in introducing the evidence, stating one important factor was the proximity in time of the flight, (*i.e.* in

6

Solomon, just a few days) to the crime charged. *Id*. at 1177.

Finally, in *United States v. Ajijola*, 584 F.3d 763, 765 (7th Cir. 2009), the Seventh Circuit affirmed evidence of flight on the government's case-in-chief at a trial involving the defendant's drug conspiracy for his flight (fleeing out the back door) which he had done on the date of his arrest, but more than three months after the conduct. The defendant argued that admitting the evidence was error because he had a compelling alternative explanation for his flight, *i.e.* he was not legally in the country. The Court acknowledged that there was no evidence to support his contention that he was fleeing law enforcement because of his immigration status, and that the timing of the call to him by a co-defendant the same day as his arrest supported a strong inference of a consciousness of guilt concerning the crimes charged. *Id.* at 766.

The government seeks to question Russell on the subject of his trip to Mexico soon after the meeting with the government, especially since he knew the investigation had been going on for over a year (*i.e.* because a search warrant had been served at his home in June 2006). Russell is free to argue the trip was pre-planned and that he was not under any charges or orders not to leave the district.

**2. Additional nude images and clothed images of Jane Doe 1 and Jane Doe 2:**

On cross-examination if Russell should testify, the government may seek to introduce other images of Jane Doe 1 and Jane Doe 2 taken by Russell pursuant to Fed. R. Evid. 414 (Evidence of Similar Crimes in Child Molestation Cases). Again, Under Rule 414, an "offense of child molestation" includes crimes under Title 18 of the United States Code, Chapter 110 of producing child pornography.

None of the charged images were located in Russell's possession during the

7

investigation. There was a missing hard drive in one computer located at his residence. The charged images, as well as numerous other uncharged images that include nude images, have been located on the internet and on other individuals' computers in other investigations since the indictment was returned charging Russell in January 2008. Russell has admitted during an interview with law enforcement and during court proceedings that he operated websites involving children, but that they were for modeling. Jane Doe 1 and Jane Doe 2 were two of the children featured in their websites KaseyModel.com and OctoberModel.com, respectively. Many of the images that have surfaced since the indictment in 2008 were from these websites

One such set of images, located by law enforcement in Georgia who notified Indiana within approximately 6 weeks of the upcoming trial, involve Jane Doe 2 in a bathtub / shower. She is depicted with suds on her nude body and in a progression of images takes her hands off her breasts and then removes panties or suds to expose her nude vagina. An adult female$^2$ is in one of the images appearing to put on or take off suds on Jane Doe 2's nude genitalia. The government believes some of the images in this series could be categorized fairly as illegal under federal law. The images appear to be taken during roughly the same time period as the charged images.

Several other images of Jane Doe 1 and Jane Doe 2 depict them clothed, partially clothed, and completely nude. Jane Doe 1 and Jane Doe 2 have stated that Russell was the photographer. Their pictures were taken in outdoor and indoor settings. Descriptions of the pictures include the Jane Does licking ice cream cones with their tongues, posing on beds, floors and other furniture

---

$^2$The government will seek to cross-examine this adult female specifically regarding these images if she is called as a witness for Russell.

wearing nightgowns, bra / tank top and panty type attire including spread leg shots and pulling up their tops or nightgowns showing panties, and posing in gymnastics leotards and swimsuits. While most of these described images of Jane Doe 1 and Jane Doe 2 would not fit within the definition of "sexually explicit conduct" as defined by 18 U.S.C. §2256, they may be relevant during cross-examination depending on Russell's testimony.

Also, two images of Jane Doe 1 and Jane Doe 2 are videos located on a computer in another state and provided to the investigators in this case. These videofiles show Jane Doe 1 and Jane Doe 2 (in each of two separate videos) dressing and dressed in bikinis and taking a shower. In one, there is music set to the video from Van Halen's song "Beautiful Girl." The government would be prepared to show these two videos to the jury.

For example, Russell may testify that he took the clothed images but not the nude images or the charged images and so "who did the crime" will be relevant. The number of times that "someone else" vs. Russell, had access to the girls to take these other pictures would be relevant since Russell was one caretaker of them. The issue of identity could be relevant.

As another example, Russell may testify that he was the photographer for all of the Jane Doe 1 and Jane Doe 2 pictures but that the charged images are not illegal because all the pictures he took were non-sexual in nature. The issues of his intent, motive, or his assertion of mistake or accident to the content of the pictures being illegal if the jury were to decide they were, could become relevant.

In the current case, other illegal images of Jane Doe 1 and Jane Doe 2, and other nude and clothed images, should be allowed because Congress, by passing Rules 413 and 414, has said that in a criminal trial it is not improper to draw the inference that the defendant committed

9

the sexual assault offense (Rule 413) or child molest (Rule 414) because he has a propensity to do so.  *United States v. Rogers, supra*, 587 F.3d at 822.   The uncharged conduct will not be any more inflammatory to view than the charged images; therefore, there is not the concern that Russell will be seen as any worse of a person for the uncharged images than they would analyze for the charged images.  Uncharged images would serve to corroborate the testimonies of Jane Doe 1 and Jane Doe 2 who are expected to state that Russell took their pictures in many settings, some were with clothing and some were not.  Uncharged images would also be relevant weighed against any number of defenses Russell might assert involving the content of the pictures, his intent when he took them, and his lack of mistake or accident if he asserts they were non-sexual in nature.

**3.  Transcripts of family law proceedings**.

Dale and Dawn Russell were married in approximately 1990 and divorced in 1998.  As part of the family court proceedings after 1999, they had several court appearances regarding child support and visitation.

**Transcript 1**:  On October 19, 2004, within approximately one week of law enforcement and Dawn Russell finding out about websites that Russell operated involving Jane Doe 1 and Jane Doe 2, a previously scheduled court date was utilized as a "Hearing on Emergency Petition to Terminate Parenting Time."  In summary, Russell admitted operating websites involving Jane Doe 1 and Jane Doe 2 using the pseudonym names of "OctoberModel.com" and "KaseyModel.com,."  Russell admitted they were websites that users, approximately 60-70 for all of his fourteen websites,  paid to access.  Russell stated he had never talked to Dawn Russell about operating websites of Jane Doe 1 and Jane Doe 2 and other children because he knew she

would not have approved.  Russell, when asked about one image of Jane Doe 1, stated, "there's nothing sexual about a twelve year old."  The Court ordered Russell to take the websites down and ordered supervised visitation.

**Transcript 2:** On October 17, 2006, Russell attempted to modify a previous order given on July 18, 2005, that prohibited any contact with his children.  In summary, Russell admitted making a nude gymnastics video with Jane Doe 1 and Jane Doe 2 that was meant for personal enjoyment and not for distribution.  Russell said that he had just gone to the gym to pick up equipment and Jane Doe 1 and Jane Doe 2 were with him and wanted to play on the equipment.  The nude part of the video was about 5-10 minutes of a 45 minutes videotape and being nude was Jane Doe 1 and Jane Doe 2's idea.  Russell denied having any pictures that depicted either Jane Doe 1 or Jane Doe 2 coming out of the shower.  Russell admitted operating a businesses called "Child Web Models" and "Photos by Dale."   Russell described himself as a recreational nudist (i.e. only if relevant because of argument below seeking to exclude such evidence in Motion *In Limine*). The transcript ended with the parties agreeing to a further court date.

**Transcript 3:** On January 22, 2007, Russell and Dawn Russell were in court again on a "Hearing on Contempt."  In summary, Russell stated he still operated about 15 modeling websites.  Russell admitted having taken nude pictures of Jane Doe 1 and Jane Doe 2 on a nude beach.

There are several statements in these transcripts that may be relevant to the current issues at trial to impeachment.   Russell was never shown any images during these hearings; however, the issue of Jane Doe 1 and Jane Doe 2's pictures and websites were a central issue.  The defense has been given copies of these transcripts and the government seeks to use them, if relevant, at

11

Russell's trial.

## MOTION *IN LIMINE* TO EXCLUDE EVIDENCE EXPECTED BY DEFENSE RELATED TO PUBLICATIONS DEPICTING NUDE CHILDREN

The government requests that the Court enter a pretrial order prohibiting Russell from presenting two categories of evidence: (1) That he and his family are "nudists," and that this practice was something that Jane Doe 1 and Jane Doe 2 participated in when they visited his house or by attending nudist camps or nude beaches when they were with him; and (2) Evidence of "comparable" photographs of real children depicted nude in books and magazines that he possessed at the time of the search warrant. The government believes that Russell will attempt to introduce books and other publications by authors such as Sally Mann, Jock Sturges, David Hamilton, and others, as well as catalogs and magazines showing nude and partially nude children. The government believes that Russell will then argue that these photographs are not lascivious and are comparable to the images charged in Counts 1-4 of the Indictment.

With respect to Russell being a "nudist" and involving Jane Doe 1 and Jane Doe 2 in trips to nudist camps or nudist beaches is irrelevant under Fed. R. Evid. 403 because it has little probative value into the real question that the jury will have before it of whether the charged images of Jane Doe 1 and Jane Doe 2 fit the definition of sexually explicit conduct under 18 U.S.C. §2256. Whether Russell is a nudist, or not, and how many times Russell or his family members ever were nude is irrelevant to whether the images of Jane Doe 1 and Jane Doe 2 are images of them engaging in sexually explicit conduct. Russell is not charged with being a nudist. Russell is charged with producing images of two minors engaging in sexually explicit conduct. Evidence of Russell's practices of being nude within his home, going to nudist camps, or going to nudist beaches will be confusing and misleading to a jury who might think that such

practices are relevant to his intent, motive, or led to a mistake or accident in producing these images.

Additionally, Russell's intended books, catalogs, or nudist magazines depicting nude children are irrelevant to Counts 1-4 which charge producing child pornography that the jury must determine as illegal, and not obscenity, for which "community standards" or comparisons may be relevant.

Child pornography enjoys no First Amendment protection. *New York v. Ferber,* 458 U.S. 747 (1982). This is true, in part, because of the especially pernicious nature of the material. *Id.; Osborne v. Ohio*, 495 U.S. 103 (1990). It also reflects the enduring harm to the children depicted in the images. *New York v. Ferber, supra*, 458 U.S. at 761. Congress recognized and addressed this harm in passing federal laws to prohibit the interstate possession of child pornography. See Senate Report No. 95-438, 95th Cong.2nd Sess. (1978) U.S. Code Cong. & Admin.News. P. 40 (noting that "[o]f deep concern to the committee is the effect of pornography...on the children who become involved...Such encounters cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future.").

In *United States v. Arvin*, 900 F.2d 1385 (9th Cir. 1990), the defendant was charged with distributing child pornography. The defense sought to introduce expert testimony as to whether the images were a "lascivious exhibition of the genitals or pubic area of any person." The district court precluded the introduction of any such testimony and the Ninth Circuit affirmed. The Ninth Circuit noted that "community standards," "redeeming value," and "prurient interest" are not relevant in determining what constitutes child pornography because the images do not

have to be obscene. *Id.* at 1387-88 (citing *New York v. Ferber*, 458 U.S. 747 (1982))  The Ninth Circuit agreed with the district court that permitting expert testimony on the issue of "lasciviousness" of the charged images would usurp the function of the jury, would not be directed at any legally relevant factors, and would have impinged on the jury's function. *Id*. at 1389-90.

Even if this Court sees them as relevant, the government requests they be excluded on the grounds that they would confuse the jury and be a waste of time, pursuant to Fed. R. Evid. 403. Essentially, Russell would be introducing the comparables for which he could then argue set the bar for the pictures that are charged in his case.  But, the law sets the bar; and not any individual who photographed and published books of nude children can be perceived by the jury to be the standard within which Russell's conduct must fit.  If allowed, questioning of witnesses and closing arguments will devolve into a distracting comparison of the charged images vs. the images in the books and publications, instead of the focus being on whether the charged images fit within the meaning of what Congress intended to be illegal under 18 U.S.C. §2256.

## Conclusion

The government requests evidence of the entire series charged under Count 1, approximately 86 pictures being the most complete set the government has obtained, of which 9 are alleged as illegal under 18 U.S.C. §2256, because the government believes the entire series shows Russell's motive, intent, and lack and mistake or accident in taking the pictures.  The entire set tells the entire story of that photo session and the jury can draw many relevant inferences about Russell's intent and motive.  There is nothing more inflammatory about the rest of the images than the charged images.   The government further requests being allowed to

14

introduce prior acts of child molest as authorized by Fed. R. 414.

Further, on cross examination, the government may seek to introduce evidence of Russell's trip to Mexico shortly after a meeting with the government in July 2007, uncharged images (clothed and unclothed) of Jane Doe 1 and Jane Doe 2 should any issues make them relevant, and prior statements made by Russell from the family court proceedings in 2004, 2006, and 2007.

Finally, the government seeks to exclude Russell from introducing through Jane Doe 1, Jane Doe 2, Russell, or any other witness evidence of Russell's practices of nudism, even if at times it involved Jane Doe 1 and Jane Doe 2.  The government further seeks to exclude Russell from introducing evidence of any publications depicting nude children which he would likely use as "comparables."  Both categories of evidence confuse the issues, mislead the jury, and distract the focus away from the real question they must ultimately decide.

        Respectfully submitted,

        TIMOTHY M. MORRISON
        United States Attorney

By:   /s/ Gayle L. Helart
        Gayle L. Helart
        Assistant United States Attorney
        Office of the United States Attorney
        E-mail: Gayle.Helart@usdoj.gov

        A. Brant Cook
        Assistant United Attorney
        E-mail: brant.cook@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2010, a copy of the foregoing Trial Brief And Motion *In Limine* To Exclude Evidence Expected To Be Presented By Defense was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

Jim McKinley
Indiana Federal Community Defenders
jim_mckinley@fd.org

Jessie A. Cook
jacook@iquest.net

By:   /s/ Gayle L. Helart
Gayle L. Helart
Assistant United States Attorney
Office of the United States Attorney
gayle.helart@usdoj.gov