# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CASE NO. 1:08CF000R-001 |
| ) | |
| DALE RUSSELL ) | |

## SENTENCING MEMORANDUM

The defendant, Dale Russell, by his counsel, Jessie A. Cook, submits the following Memorandum in contemplation of his sentencing hearing now scheduled for May 17, 2010.

I.   The Facts.

Dale Russell was the subject of a four count Indictment returned on January 8, 2008 alleging that he produced child pornography in violation of 18 U.S.C. 2251(a) and (d) in 2004. The minimum term of imprisonment for each count is 15 years and the maximum term is 30 years per count. 18 U.S.C. 2251(e).

The subjects of the charged images were Russell's daughters, then ages 8 and 10. The daughters resided with their mother, Russell's ex-wife, and visited with him periodically in 2004.

Russell admitted that he created the photographs which were the subjects of the Indictment, but denied that the photographs depicted "sexually explicit conduct" or the "lascivious exhibition of the genitals or pubic area" as required by the statute defining pornography.

On March 2, 2010, following a jury trial, Russell was convicted of all counts.

1

The PSIR, filed herein on April 13, 2010, concludes that the guideline range for imprisonment is life. This is based on a total offense level of 49 and a criminal history category of I. In arriving at a total offense level of 49, the Probation Officer applied U.S.S.G. 2G2.1 and made the following determinations [to which Russell has objected]:

* The base offense level is 32.
  U.S.S.G. 2G2.1(a)
* The base offense level is enhanced by 2 levels for distribution.
  U.S.S.G. 2G2.1(b)(3)
* The base offense level is enhanced by 5 levels based upon a determination that the defendant is a repeat and dangerous sex offender.
  U.S.S.G. 4B1.5(b)(1)

The offense level was further enhanced by the application of 2G2.1(b)(1)(B), (b)(5) and by 3D1.4.

II.   The Argument.

The sentencing guideline range recommended by U.S.S.G. 2G2.1 is far greater than necessary to serve the purposes of sentencing in this case. The enhancements applied for distribution and pursuant to a determination that Russell is a repeat and dangerous sex offender are inapplicable to Russell's situation and are unduly harsh. The combination, resulting in a offense severity level of 49 is far greater than warranted by the facts of this case and results in an aberrant and unduly harsh penalty.

In imposing sentence, the district court must consider the factors set forth in 18 U.S.C. 3553(e). *United States v. Harris*, 490 F.3d 589, 593 (7th Cir. 2007), *cert. den'd*, 128 S.Ct. 963 (2008).

One of the seven factors to be considered, among the rest, is the advisory guideline range. 18 U.S.C. 3553(e)(4). *United States v. Demaree*, 459 F.3d 791, 794-5 (7th Cir. 1996), cert. den'd, 127 S.Ct. 3055 (2007). While the district court must give respectful consideration to the advisory guidelines and the advisory guideline range, *Gall v. United States*, 128 S.Ct. 586, 596 (2007), such consideration does not require – or, indeed, permit – a presumption that the guideline sentence is the accurate and appropriate sentence. *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007).

After a consideration of all of the 3553(e) factors, the court should impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing, including the imposition of a just punishment, deterrence, rehabilitation and protection of the public. 18 U.S.C. 3553(a). In our post-*Booker* world, this means that the district court's "reasoned sentencing judgment rests upon an effort to filter the Guidelines' general advice through 3553(a)'s list of factors. *Rita v. United States*, 127 S. Ct. 2456, 2469 (2007).

The guidelines and resulting ranges for child pornography cases, with its many enhancements, contains serious flaws. See, Troy Stabenow, <u>Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines.</u>[1] Stabenow's thesis is that U.S.S.G. 2G2.2 does not reflect the Commission's typical development of other guidelines which have been the result of serious empirical study. The offense levels in 2G2.2, in contrast, have been repeatedly increased despite evidence and the recommendations of the Commission to the contrary.

---

[1] http://sentencing.typepad.com (June 10, 2008).; also discussed in the ABA Journal, "A Reluctant Rebellion", June 2009.

These increases have resulted from arbitrary decisions of Congress, slipped into other bills, often with little or no debate. Id. at 2. The increases were at times implemented in the face of objections by the Commission itself, which sought to persuade Congress not to make the changes. Id. at 3-7. Stabenow specifically points to the enhancement of the guidelines by specific offense characteristics – such as material involving children under the age of 12 years – which apply in almost every case and which do not serve to distinguish those perpetrators whose crimes warrant harsher treatment. Stabenow concludes that "The flaw with U.S.S.G. 2G2.2 today is that the average defendant charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History." Id. at 22-23. Because the child pornography guidelines do not reflect the Commission's unique institutional strengths, they are entitled to less deference. *United States v. Baird*, 580 F. Supp. 2d 889, 893-4 (D. Neb. 2008) (describing the child pornography guidelines as "a less reliable appraisal of a fair sentence".); *United States v. Shipley*, 560 F. Supp.2d 739, 744 (S.D. Iowa 2008) (" the Court has been unable to locate any particular rationale for [the child pornography guidelines] beyond the general revulsion that is associated with child exploitation-related offenses"); *United States v. Hanson*, 561 F.Supp. 2d 1004, 1008 (E.D. Wis. 2008).

      The guideline range employed in this case begins at a level 32. It is enhanced by 2 levels for distribution. While Russell did not dispute the fact that photographs which he created ended up on a Canadian computer, there was no evidence that he created the photographs for the purpose of disseminating them or that he intentionally did so.

The guideline range also includes a five level enhancement under 4B1.5(b). This guideline, designed to further punish "repeat and dangerous sex offenders" provides that :

> " (b) In any case in which the defendant's instant offense of conviction is a covered sex crime….and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
> (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three…..

The guideline arguably applies to Russell's situation because he allegedly "engaged in a pattern of activity involving prohibited sexual conduct" on repeated occasions during 2004 with both Jane Does and over a period of three years with Jane Doe 1. [See, paragraph 71 of the PSIR].

Although Jane Doe 1 testified to two instances of alleged sexual improprieties perpetrated by the defendant[2], the testimony was inherently unbelievable given her failure to report the alleged contact during the 6 + years following its alleged occurrence, her failure to report the allegation to various treatment providers despite the lack of contact with Russell and her denial of any such contact during the week prior to trial. These two instances do not constitute "a pattern of activity involving prohibited sexual conduct" as only one of the instances cited by Jane Doe 1 alleges a touching.

However, Russell concedes that, even without consideration of Jane Doe 1's allegations of inappropriate sexual conduct, the guideline seemingly applies to the offenses for which he was convicted.

---

[2] Including one instance wherein the defendant was alleged to have provided her with some sort of vibrating device, but wherein he was not alleged to have engaged in sexual touching.

5

The application of this guideline is inappropriate and redundant in Russell's case for three reasons. First, the guideline applies to "covered sex crimes", defined as "…(ii) chapter 110 of [Title 18], not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense…" thereby including the production of child pornography regardless of the circumstances of that production. [App. note 2] Second, the guideline requires that the defendant "engaged in ….prohibited sexual conduct" which is defined so as to include "…(ii) the production of child pornography". [App. note 4(A)] Third, the guideline requires that the defendant engaged in "a pattern of activity" involving the prohibited sexual conduct. The requisite "pattern of activity" is present if the defendant "engaged in a pattern of activity involving prohibited sexual conduct if, on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor". [App. note 4(B)(i)]

Thus, a defendant convicted of creating two images of minors deemed to be pornographic qualifies for a five level enhancement as a Repeat and Dangerous Sex Offender Against Minors, no matter how comparatively mild the images are or the context in which they were created. The guideline increases the penalty for any person convicted of the production of child pornography provided only that there were multiple photographs taken – probably the norm in such cases. Thus the enhancement does not effectively single out the most culpable of the creators of such pornography or provide a logical rationale for increasing – quite dramatically – the penalty imposed on persons who create multiple images regardless of the nature of the images or the harm caused by the creation.

Given the Commission's background statement and the harshness of the enhancement, 4B1.5 seems designed to increase punishment for those

6

defendants who represent the "worst of the worst" offenders, including persons who repeatedly molest children; photograph themselves having intercourse with minors; or create photographic images of minors in sado-masochistic poses or while engaged in overtly sexual activities. If this is the goal, the guideline fails to achieve it.

In Russell's case, application of the guidelines results in a range of life imprisonment for an individual with a criminal history category of I who created arguably artistic images of his daughters, partially or fully unclothed, but without any overtly sexual imagery or artifacts.

The imposition of a guideline sentence on Russell would totally disregard the very low threat he poses to society and would equate the arguably artistic images he created with the most deviant and disturbing images prevalent in other prosecutions. It would be a result completely disproportionate both to the crime and to the offender.

\* \* \*

Russell must be viewed as an individual in light of all of the 3553(e) factors.

<u>The nature and circumstances of the offense</u>. While conceding that the photographs in question are disturbing to many viewers and acknowledging that the jury found them to constitute lewd and lascivious displays of the genitalia of minors, the court should consider that they were created without physical harm to the minors involved and do not depict scenes of bondage, bestiality and/or sado-masochistic images. While the minors, by the time of trial, articulated their view that the photographs were inappropriate, at the time they were created, the girls apparently did not perceive any harm from the photo sessions. This is not asserted as a defense in any way but, rather,

as a factor to be considered in weighing the harm and the scope of the harm occasioned by the defendant's actions.

The characteristics of the defendant. Russell is a 48 year old married individual with no prior felony convictions and no criminal history points. He has a college degree, specialized knowledge in several fields and a history of employment – albeit not very lucrative employment - within his fields. Russell has never suffered from any alcohol or drug problems, nor been diagnosed with mental illness. These factors make him amenable to rehabilitation and reduce the risk of recidivism.

The need for the sentence imposed. The mandatory minimum sentence in this case is fifteen years per count with a term of supervised release of from five years to life. This substantial penalty adequately reflects the seriousness of the offenses, promotes respect for the law and just punishment. The penalty exceeds penalties imposed by the federal courts for many violent offenses and puts the public on notice of the exceedingly serious nature of such offenses and of Congress' intent to punish such crimes harshly.

Russell is deterred from any future criminal conduct by his conviction herein and by the personally and publicly humiliating nature of the accusations and prosecution brought against him.

Russell is not in need of educational or vocational training, medical care of other treatment which could be provided during his incarceration. However, he is willing to participate in any programs deemed appropriate by the Court and will abide completely by the rules of the institution to which he is assigned.

<u>The kinds of sentences available, the advisory guideline range ad any pertinent policy statements issued by the sentencing commission</u>. Are set forth above.

<u>The need to avoid unwarranted sentencing disparities</u>. Russell has no co-defendants. His crimes are somewhat unique given the nature of the photographs taken and the circumstances of their creation. Counsel is aware of no similar cases to which his should be compared.

<u>The need to provide restitution to the victims</u>. The PSIR contains no information regarding specific restitution. However, Russell acknowledges the applicability of U.S.S.G. 5E1.1 and is willing to comply with the court's order of restitution. To the extent that he does so, he will best be able to contribute to restitution when he is on supervised release.

III.   <u>The Conclusion</u>.

Given the nature of the offenses herein and the specific characteristics of the defendant, the appropriate penalty is concurrent terms of Fifteen years each, followed by a period of supervised release. This sentence, rather than the unduly harsh one prescribed by the guideline range, is "sufficient but not greater than necessary" to satisfy the purposes of sentencing.

s/Jessie A. Cook
JESSIE A. COOK, 3715-84
400 Wabash Avenue, Suite 212
Terre Haute, Indiana 47808
(812) 232-4634
jacook@iquest.net

Attorney for Defendant Russell

## CERTIFICATE OF SERVICE

The undersigned Counsel of Record for the defendant hereby certifies that a true and accurate copy of the above and foregoing document has been mailed and transmitted electronically on the 17th day of  May, 2010 to the Office of the United States Attorney at the following address:

Gayle Helart, AUSA
Brent Cook, AUSA
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048

s/ Jessie A. Cook
Jessie A. Cook